#### IN THE

# HIGH COURT OF ERRORS AND APPEALS

#### FOR THE

## STATE OF MISSISSIPPI.

---

## OCTOBER TERM, 1859.

### ANTHONY BENNETT *v.* CHARLES BYRAM & Co.

1. BAILMENT: COMMON CARRIER: DELIVERY OF GOODS MUST BE IN A REASONABLE
TIME.—Where the bill of lading does not specify any time for the delivery of
the goods at the port of destination, the delivery must be made in a reasonable
time, and with reasonable expedition; and where the contract is to transport
on a navigable river, the reasonableness of the time of delivery must be deter-
mined, under all the circumstances, with a view to the state of the river, the
season of the year, the weather, &c. See Ang. on Carr. § 289; 8 Term R.
259; Story on Bailm. § 545, a.

2. SAME: COMMON CARRIER: LOW WATER EXCUSE FOR A DELAY IN DELIVERY.—A
low stage of water in a navigable river, which renders it impossible for a com-
mon carrier to proceed to the port of delivery, is a valid excuse, so long as it
exists, for the delay thereby occasioned in the delivery of the goods; but it does
not avoid the contract, and release the carrier from his obligation to deliver
the goods according to his undertaking, in a reasonable time after the obstruc-
tion ceases to exist.

3. SAME: COMMON CARRIER MAY STORE GOODS WHEN DETAINED BY LOW WATER.—
A common carrier, who, owing to the low water, is unable to proceed to the
end of the voyage, may unlade and store the goods at an intermediate point
during the existence of the obstruction to navigation, but he is liable for the

expenses thereof, and is also bound to take care of the goods whilst thus detained.

4. SAME: ACCEPTANCE BY OWNER AT INTERMEDIATE PORT DISCHARGES CARRIER.—
If the owner of goods stored by a common carrier at an intermediate port, for safe keeping until a rise in the water will enable him to proceed with the voyage, accept them at that port, the carrier is discharged from all further liability, and is entitled to receive a *pro rata* compensation for the transportation, as far as it has been accomplished. See *Parsons* v. *Hardy*, 14 Wend. 215; *Rossiter* v. *Charter*, 1 Dougl. Mich. R. 154; *Hunt* v. *Haskell*, 11 Shepl. (Maine) R. 239; 1 Nott & McCord, 132.

ERROR to the Circuit Court of Monroe county. Hon. Joel M. Acker, judge.

This was an action by Byram & Co. against Bennett, the master of the steamboat Eliza, No. 2, to recover damages from him as a common carrier between the ports of Mobile, Alabama, and Aberdeen, in this State, for his failure to deliver, at the last named port, certain goods shipped by the plaintiff on the said steamboat, in June, 1855. The defence relied on was that the defendant was prevented from complying with his contract by low water.

It was shown in evidence, that on the 4th day of June, 1855, the clerk of the steamboat Eliza, No. 2, then lying at Mobile, executed a bill of lading, reciting that said boat was bound for the port of Aberdeen, and acknowledging the receipt of certain goods for plaintiff, and promising " to deliver the same in good order and condition to said C. Byram & Co. (dangers of the river excepted)." The bill of lading contained another exception, viz., " water permitting;" and there was evidence tending to show that this was inserted improperly by the clerk of the boat, after delivery of one of the copies of the bill of lading to the shipper; but as under the opinion of the court this was immaterial, the evidence on this point is not set out.

It further appeared, that the boat proceeded without delay to the port of Gainesville, on the Tombigbee river, and that owing to the low stage of the water at that time, and which continued until the 1st of November following, steamboat navigation above that point was impossible. The carriers stored the goods with a warehouseman in Gainesville, and in August thereafter the plaintiff sent for, and received and conveyed by wagons all the goods, except the

iron, to Aberdeen. The carrier collected freight on the goods from the warehouseman, but it does not appear whether he collected more than the due proportion of the freight to that point. It was also shown, that after the rise in the river, in November, 1855, and before 1st June, 1856, the steamer Eliza, No. 2, made several trips to Aberdeen, and failed to comply with the request of plaintiff to bring up the iron left at Gainesville, but it does not appear that Bennett was then master or owner of the boat; and finally, that in January, 1856, the plaintiff procured the iron to be brought up by another steamer. No damages occurred to the goods, except, to a small amount, to a portion of the iron from rust.

The instructions to the jury for plaintiff necessary to be set out, are as follows:

1. A steamboat which carries freight and passengers for hire, is a common carrier.

2. A common carrier is, in contemplation of the law, an insurer for goods intrusted to his care, and will be bound for their safe delivery according to contract, unless prevented by the act of God.

6. The bill of lading, in this case, is an entire contract, and if the defendant failed to comply with his undertaking, he is not entitled to any compensation for part performance.

7. If defendant failed to deliver the goods of plaintiff according to his undertaking, he is liable for damages for such failure.

8. All the cost, charges, and expenses incurred by plaintiff, and all damages to goods resulting from such failure, constitute damages, for which plaintiff is entitled to recover.

10. No time of delivery being named in such a contract as this one sued on, the carriers are bound by law to deliver them, in a reasonably appropriate time to meet the purposes for which the goods were intended.

The verdict of the jury was for plaintiff, and for a greater sum than the proof showed that the goods were damaged, and the expenses incurred at Gainesville, and in transporting the goods from that point to Aberdeen.

The defendant moved for a new trial, which being refused, he excepted and sued out this writ of error.

*L. E. Houston*, for plaintiff in error,
Cited Abbott on Shipping (Story's ed.), pt. 3, ch. 7, § 2; *Luke*

Bennett *v.* Byram & Co.

v. *Lyde*, 2 Burr, 886; *Sutridge* v. *Gray*, Abbott on Shipp. 340; 1 John. Cases, 383; 2 Caines R. 21; *Robinson* v. *Warren Insurance Company*, 2 Johns. 322; *Mallory* v. *Backer*, 5 East R. 316; *Welsh* v. *Hicks*, 6 Cow. R. 504; *Parsons* v. *Hardy*, 14 Wend. 218.

*Sale* and *Phelan*, for defendants in error,

Cited 1 Dev. & Batt. R. 273; Angl. on Carriers, § 282; 6 Blackf. 260; Edwards on Bailments, 523.

HARRIS, J., delivered the opinion of the court.

The defendants in error brought their action in the Circuit Court against the plaintiff in error, to recover damages against him as a common carrier by steamboat, for the non-delivery of goods according to contract.

The defendant filed his answer,—a general denial of the statement of the cause of action in the complaint; upon which issue was joined, and jury and verdict for plaintiff.

It is assigned for error, that the jury found contrary to law and evidence.

That the court erred in giving the charges asked by plaintiff below, and in refusing charges asked by the defendant below.

And lastly, that the court erred in refusing to grant a new trial.

It appears, by the record, that on the 4th day of June, 1855, the plaintiff in error, as master of the Eliza, No. 2, a steamboat navigating the Tombigbee river between Mobile and Aberdeen, by bill of lading of that date contracted to deliver certain goods as a carrier to the defendant in error.

The boat proceeded on her way as far as Gainesville, and was unable to proceed farther on account of the low stage of water. The goods were stored in the warehouse of McMahon in June, 1855. The water remaining too low for steamboat navigation for several months thereafter.

On the 21st August, 1855, defendants in error sent an order to McMahon for all the goods except the iron, and received and hauled them to Aberdeen. And afterwards, in January, 1856, the iron was shipped to plaintiffs by the steamboat Champion. In this action it is sought to recover all the expenses which defendants in error incurred, after receiving the goods at Gainesville, and indeed

after they were left there by the plaintiff in error, as well as a small amount of damage sustained by the rusting of the iron. It is not claimed that any other damage was suffered.

There is no proof of damage by negligence or other improper conduct on the part of plaintiff in error, unless his failure to reach Aberdeen with the goods intrusted to his care is to be so regarded. We lay out of view all that is said in this record, and in argument, as to the alteration of the bill of lading, and the circumstances under which the bill was signed, as wholly immaterial in this case. The addition of the words, " water permitting," did not change the character of the contract, as they are embraced under the general exception, " the act of God." See Angell on Carriers, §§ 289, 333, and note 2.

The first question for our determination upon the record before us, which it is material to consider, is what was the obligation of the plaintiff in error under this contract as a common carrier.

Admitting that this bill of lading was intended as a contract to deliver the goods to the defendants in error *at Aberdeen* (which seems not to have been expressed on its face), the carrier was bound first to proceed without deviation from the usual and ordinary course, to the place of delivery. He was next bound to *deliver* the goods to the consignees *in safety*, *at all events*, excepting the act of God, the public enemies, and the act or conduct of the owners. He was bound to make delivery in a *reasonable time* and with reasonable expedition, as no *time* of delivery is specified in the contract. For (says Mr. Angell in his work on Carriers, § 283), the duty to deliver, within a reasonable time, is a term ingrafted by legal implication upon a promise or duty to carry generally. See also *Hand* v. *Baynes*, 4 Whart. Penn. R. 204, cited in note, and numerous other cases cited. "What would be reasonable time, must be determined under all the circumstances, with a view to the condition of the river, the season of the year, the state of the weather," &c. See Angell on Carriers, § 289, and notes, p. 288; 8 Term. R. 259; Story on Bailments, § 545, a.

Again: the obligation of the carrier to deliver according to his contract, is only suspended during any temporary obstruction. It is not thereby avoided. Angell on Carriers, § 289, and cases cited. Hence, plaintiff in error was bound, notwithstanding the hindrance

of navigation by low water, to deliver defendant's goods in safety, as soon as he could, by reasonable diligence, *after* the removal of the unavoidable cause of delay. See also Angell, § 294.

From the obligation to deliver, at all events, the carrier may, under certain circumstances, be excused. And among these, the same learned author mentions the following : " If the owner or shipper is induced from any cause to accept the goods short of the place to which they were first intended to be conveyed, the carrier is not only discharged from liability further, but is entitled to a *pro rata* compensation for the transportation as far as it has been continued." Angell, p. 330, § 331.

The acceptance of the goods voluntarily from the warehouseman, knowing that the voyage had been abandoned on account of the low water, and paying these charges for storage, will excuse delivery, and discharge the carrier from further liability therefor. See *Rossiter* v. *Charter*, 1 Doug. Mich. R. 154; *Parsons* v. *Hardy*, 14 Wend. 215; *Hunt* v. *Haskell*, 11 Shep. Maine R. 339; 1 Nott & McCord, 132.

In the case before us the proof is clear by the testimony of the parties themselves, that they did accept the goods at Gainesville, paid the freight and storage, and hauled the goods to Aberdeen— all except the iron—long before the plaintiff in error could have complied with his contract, or was bound to have made delivery under the facts in proof. By this acceptance, we have seen that the plaintiff in error was discharged from all subsequent liability or responsibility on account of his contract. Until the goods were so accepted, the carrier was entitled to no compensation before delivery, and was bound for all charges and expenses incurred in the preservation of the goods, and all damage or injury impairing their value while in his possession. After acceptance, he was only entitled to his *pro rata* share of the freight. If he received more than the usual freight from Mobile to Gainesville, he is liable to the defendant in error for such overplus, if they have been compelled to pay it, or have paid it, to him or to his agents or factors, in order to obtain their goods.

After acceptance of the goods at Gainesville by the owners, the carrier was not bound for the expenses of transportation from thence to Aberdeen.

In the view of the case here presented, the 4th, 5th, 6th, 7th, 8th, 9th, and 10th instructions were erroneous, and the verdict of the jury for a greater sum than the testimony warranted under the principles above stated. .

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.