H. C. PINDELL, EXTR., v. HELEN J. HARRIS ET AL.

1. LIMITATION OF ACTIONS. *Absence from and residence out of State.*
   Under the second clause of Code 1871, § 2157, a person, who, after a cause of action has accrued against him, removes and resides out of the State, is entitled, in computing the bar of the Statute of Limitations, to the benefit of the time spent here on subsequent visits, open, notorious and long enough for suit.

2. SAME. *Successive absences. Running of statute.*
   Such person cannot claim that because of his visit to the State his subsequent absences are to be disregarded, and the statute to run continuously, for the rule announced in *Ingraham* v. *Bowie*, 33 Miss. 17, is altered by the second clause of Code 1871, § 2157. *Withers* v. *Bullock*, 53 Miss. 539, cited.

3. SAME. *Absence and non-residence both essential.*
   The clause refers to those who, residing here when the right of action accrues, thereafter remove, and are absent from and reside out of the

State ; and, if the debtor either retains his residence or is present here, the statute continues to run in his favor.

4. SAME. *Transient or clandestine visit.*

The time of the debtor's merely passing through the State, or coming into it for a few hours or days each week or month, or his furtive, clandestine, or transient presence here, cannot be estimated in his favor.

5. MARRIED WOMEN. *Promise to pay antenuptial debt.*

*Quære,* Can a married woman bind herself or property by a promise to pay an antenuptial debt.

APPEAL from the Chancery Court of Sharkey County.

Hon. W. G. PHELPS, Chancellor, having been of counsel, W. A. PERCY acted as Chancellor *pro hac vice.*

*W. G. Phelps,* for the appellant.

1. The promise to pay the antenuptial debt is valid. The power is a consequence of our legislation, and is embraced in the spirit of the married woman's law. 1 Bouvier's Law Dic. 49 ; *Foster* v. *Allanson,* 2 T. R. 483 ; *McDowell* v. *Wood,* 2 Nott & McCord, 242 ; *Memphis Railroad Co.* v. *Scruggs,* 50 Miss. 284 ; *Travis* v. *Willis,* 55 Miss. 557 ; Angell on Lim. § 150 ; *Viser* v. *Scruggs,* 49 Miss. 705 ; Tyler on Infancy and Coverture, §§ 217, 234 ; Clancy on Married Women, 13. The defendant is also estopped to set up her incapacity by retaining the property until it is valueless, worn out or destroyed. *Shivers* v. *Simmons,* 54 Miss. 520.

2. Remedy is not barred because, owing to Mrs. Harris's residence in Tennessee, the Statute of Limitations did not run. Code 1871, § 2157. The period during which she was in this State as a mere visitor cannot be counted in her favor. Her answers upon this point, where indefinite, must be construed most favorably to the appellant. *Tarpley* v. *Wilson,* 33 Miss. 467 ; Story Eq. Pl. § 854 ; 1 Dan. Ch. Prac. 724. Under statutes identical with ours, the construction contended for has been adopted in other States. In *Rockwood* v. *Whiting,* 118 Mass. 337, Gray, C. J., said : " By the well-settled construction of the Gen. Sts., c. 155, § 9, and of the statute of New York from which it was taken, a person who has a domicile and actual residence in another State, and only comes into this State occasionally, or even for a few hours daily, is ' absent

from and resides out of the State,' and the Statute of Limitations does not run in his favor;" citing *Milton* v. *Babson*, 6 Allen, 322, and *Burroughs* v. *Bloomer*, 5 Denio, 532. In the latter case, decided under the New York statute, which has the words, "shall depart from and reside out of the State," it is said that "the statute *ceased to operate* as long as the defendant continued to *reside* abroad." The question was raised in this State in the case of *Withers* v. *Bullock*, 53 Miss. 539, and while probably not directly decided, the language of the court seems to be in accord with the above decisions. In this case, however, the old case, cited by the defendants, of *Ingraham* v. *Bowie*, 33 Miss. 17, is held not to apply to the present statute. If the rule, for which the appellees' counsel contend, is applicable, the bar can never be proved complete. How was it possible for the complainant or any other creditor to know that Mrs. Harris was here? Such knowledge must be proved as to occasional visits. *Crosby* v. *Wyatt*, 23 Maine, 156. How, by any diligence short of a dogging spy upon her every movement for years, could the complainant learn of her coming here, and be prepared with process to serve upon her? She was a resident of Memphis with her husband. The burden shifted, when the appellant proved that Mrs. Harris permanently removed from the State in October, 1871. The presumption of law then came to his aid, that she remained absent, as the proof placed her. Then it became the duty of the defendants to rebut that presumption, and show affirmatively that she was in the State afterwards long enough to fix the bar. And this result would also follow under the general rule that, where the facts are peculiarly within the knowledge of the defendant, he must make the proof. 2 Greenl. Evid. § 79.

*T. C. Catchings*, on the same side.

A married woman who owes a debt which is enforceable against her, and which rests in open account, can change the form of the debt by giving her note. At times it may be highly beneficial to her to obtain an extension of credit from her antenuptial creditors. This proposition counsel discussed at great length, citing, among other authorities, *Orcutt* v. *Berrett*, 12 La. Ann. 178; *McNair* v. *Stanton*, *ante*, 298; and

*Floyd* v. *Pearce, ante,* 140 ; contending also that, even if the written promise is inoperative as a security for money, it is still an acknowledgment sufficient to take the case out of the statute. *Utica Ins. Co.* v. *Kip,* 3 Wend. 369. The second point the counsel did not argue, but, upon the proposition that Mrs. Harris's testimony as to the time of her absence must be taken most strongly against her, he cited *Kennedy* v. *Shea,* 110 Mass. 147.

*Miller & Hirsh,* for the appellees.

1. Upon the face of the note, the bar was complete before the filing of the bill. It devolved upon the complainant to show that the defendants had been absent from and resided out of the State a sufficient length of time to avoid the bar. He sought to do this by the evidence of the defendants, which he claimed must be taken most strongly against them. The true rule is that the complainant must establish the exception by proof. But in no view can the exception be maintained upon any reasonable construction of the evidence. *Withers* v. *Bullock,* 53 Miss. 539, announces that the rule under which *Ingraham* v. *Bowie,* 33 Miss. 17, was decided, has been changed, and states that the last clause of the statute "applies to one who shall be absent from and reside out of the State." The court fails to say what is the " different rule " introduced, and leaves that to be ascertained from the language of the statute, and its reason and policy. As to the latter, Statutes of Limitations are statutes of repose, are favored by the courts, and exceptions to them are strictly construed. The literal language of the statute requires that, " if after any cause of action shall have accrued " it shall be sought to avail of the exception, then both absence and non-residence must concur. Neither, alone, will do. If the defendant is personally present in the State, service of process can be had on him personally; if absent from the State, but still a resident, service of process can be had by leaving a copy of the summons at his usual place of abode. By § 1783, Code 1871, if summons for the husband be returned " not found," the suit may be prosecuted against the wife alone. In the cases cited by counsel, the policy of limitation does not seem to have met with favor or even consideration, and we respectfully submit that, if literal

language is to be departed from, there could be no safer guide than the policy of the act in question.   In *Hall* v. *Nasmith*, 28 Vt. 791, it was held that absence from and residence out of the State were necessary to raise the exception, and that only the time when both concurred should be deducted from the statutory period.   Certainly the rule in Mississippi must be the same, unless we assume that non-residence and absence are the same thing, and it requires what we conceive to be an unwarranted refinement of construction to support this assumption.

2.  A married woman cannot by a written acknowledgment of an antenuptial debt bind herself so that she cannot plead the bar of the statute which subsequently attaches.   Tyler on Infancy & Coverture 317 ; 1 Greenl. Evid. § 127.   The *feme covert* is still subject to her common-law disabilities, except as to the class and subject of contracts enumerated in the statutes. *Whitworth* v. *Carter*, 43 Miss. 61 ; *Foxworth* v. *Magee*, 44 Miss. 430 ; *Mallett* v. *Parham*, 52 Miss. 921.   The case at bar does not fall within the exceptions created by the statutes ; they are silent upon the subject.   *Travis* v. *Willis*, 55 Miss. 557.

*Frank Johnston*, on the same side.

Mrs. Harris could not take the case out of the Statute of Limitations by promising to pay her antenuptial debt.   Code 1871, § 1780.   *Reinhardt* v. *Hines*, 51 Miss. 344 ; *Hawkins* v. *Long*, 74 N. C. 781 ; *Davis* v. *Foy*, 7 S. & M. 64 ; *Mallett* v. *Parham*, 52 Miss. 921 ; *Nelson* v. *Miller*, 52 Miss. 410.   The contract being void at common law, and the separate estate at common law being bound for the original antenuptial debt, there is no statute which confers upon the wife the power previously unknown of contracting in respect of this class of debts.   *Travis* v. *Willis*, 55 Miss. 557 ; *Klotz* v. *Butler*, 56 Miss. 332.   No implied ratification resulting from Mrs. Harris's having kept the property can make this debt one contracted during coverture.

CHALMERS, J., delivered the opinion of the court.

The suit is against a married woman upon a stated account with written promise to pay executed by her after marriage as to a debt contracted before marriage.   The question is much

discussed by counsel whether a married woman can bind herself or her property by a promise to pay an antenuptial debt, it being insisted, on the one hand, that, as she could not do so at common law and is not empowered to do so by statute, all such contracts are necessarily void ; and, on the other, that, as the antenuptial debt is itself binding, there can be no valid objection to her renewing the obligation, inasmuch as the common-law reason, that by so doing she imposes a prolonged liability upon her husband, does not exist with us.

The question is interesting, but not deemed necessary to be decided, since, conceding the power, and treating the written acknowledgment and promise as equivalent to a promissory note, we are of opinion that it is barred by the Statute of Limitations. It was executed in 1865, at a time when the Statute of Limitations was suspended in this State. The statute began to run on April 2, 1867, at which time Mrs. Harris resided here. She continued to reside here until October, 1871, when she removed to Memphis, Tennessee. Four years and six months elapsed from the time when the statute was set in motion until her removal from the State. She returned to the State in April, 1873, and resided here for fifteen months and a half, and then again returned to Memphis, where she has since continued to reside. The two periods together aggregate five years, nine months and a half, being two months and a half short of six years. In 1872, while confessedly a resident of Memphis, she visited her mother, with whom she had always previously resided, at her home in Madison County in this State, and there remained for from three to five months. If the period of this visit is to be counted in her favor, or is to be deducted from the time when she is to be regarded in the language of the statute as " absent from and residing out of the State," then the bar of the statute in her favor is complete, — otherwise not.

The statute (Code of 1871, § 2157) declares, " if, after any cause of action shall have accrued, the person against whom it has accrued shall be absent from, and reside out of the State, the time of his absence shall not be taken as any part of the time limited for the commencement of the action." The clause refers to those who, residing here when the right of

action accrues, shall thereafter remove elsewhere.   It declares
that the time during which they are absent, so residing else-
where, shall not be taken as forming any portion of the period
of limitation.   Two things, therefore, it would seem, must
concur before the creditor can deprive the debtor of the benefit
of the flow of time, viz. residence elsewhere and actual absence
from this State.   If the debtor, retaining his residence here, is
temporarily absent, the statute continues to run in his favor.
If, residing elsewhere, he is actually present here, the same
result ensues.   We do not mean by this that a furtive, clan-
destine or transient presence here would avail the debtor.
Merely passing through the State, or coming into it for a few
hours or days each week or month, would not suffice.   Such
presence would not afford the creditor an opportunity to sue,
and would require calculations of time, with a view of deter-
mining the whole period spent here, so difficult as to be imprac-
ticable.   But where the presence here has been open, notorious
and continuous for weeks or months, to allow the creditor to
disregard it would seem to be a violation of the letter of the
statute which permits him only to ignore the time during which
the debtor has been absent from and resided out of the State.
It is the period of absence that he is permitted to deduct.
The time of presence must be counted, unless it be secret or
evanescent in its character.

Our statute is similar in language to those of New York,
Massachusetts and Vermont.   In the first two States a con-
struction different from that here announced has been put
upon it, though in both States the cases in which the point
was decided were instances of daily visits lasting only a few
hours, the debtors returning at night to their homes in the
foreign States.   In Vermont a conclusion similar to our own
was reached, the court saying, however, that there must be
a continued residence or commorancy in the State upon the
part of the returning debtor; that is to say, a stay contin-
uous, not fitful, — an abiding which is fixed, though temporary
in its character.   *Hall* v. *Nasmith*, 28 Vt. 791.

We think the visit of Mrs. Harris to her former home in
1872, and her stay there of three or five months, come fully up
to the requirements here laid down, that she is entitled to

have it computed in her favor, and consequently that the suit is barred.

In *Ingraham* v. *Bowie*, 33 Miss. 17, it was held under the provisions of Hutch. Code, p. 831, § 11, that the Statute of Limitations once set in motion by a debtor's return to the State would thereafter run on continuously in his favor, notwithstanding repeated subsequent absences by him. In *Withers* v. *Bullock*, 53 Miss. 539, we held that this rule was abrogated by the Codes of 1857 and 1871, and that a debtor could not now claim that, because he was once openly and notoriously in the State, his subsequent absences were to be disregarded, and the statute to run on continuously in his favor. The point now decided, namely, as to whether the debtor who has departed from the State can claim the benefit of the time spent here on subsequent visits when his presence has been open, notorious, and sufficiently long to afford the creditor an opportunity to bring suit, has not heretofore been determined in this State. We have given it the consideration which its practical importance demands.

*Decree affirmed.*